UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL DAVIS-EL,

       Petitioner,

v.                              CASE NO. 04-CV-72375-DT
                              HONORABLE GEORGE CARAM STEEH

THOMAS BELL,

       Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Earl Davis-El has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The petition attacks Petitioner's conviction and sentence for second-degree murder. The State, through the Michigan Attorney General, urges the Court to deny the habeas petition.

The Court has concluded for reasons set forth given below that Petitioner's claims lack merit or are procedurally defaulted. Accordingly, the habeas petition will be denied.

### I. Background

Petitioner was charged in Saginaw County, Michigan with open murder, felon in possession of a firearm, felony firearm, and carrying a concealed weapon. On October 3, 2000, a circuit court jury found Petitioner guilty of second-degree murder, MICH. COMP. LAWS § 750.317, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and felony firearm, MICH. COMP. LAWS § 750.227b. The convictions arose from the fatal shooting of Eric Coleman at 346 South Fourth Street in Saginaw, Michigan on March 31, 2000. Coleman was seated in the back seat of a car driven by Jack Tillman.

The prosecutor proceeded on a theory of transferred intent. He argued that Petitioner

intended to shoot Jack Tillman, but hit Eric Coleman instead. The evidence at trial established that Petitioner and Tillman had argued a day or two before the shooting. Petitioner apparently accused Tillman of being a snitch and informed Tillman not to come around 346 South Fourth Street anymore. There was some testimony that Tillman subsequently made a threatening comment about Petitioner and that Petitioner became aware of the threat through friends. Tillman denied making the threat, and the prosecutor argued that Petitioner and another witness fabricated the threat to support Petitioner's defense that he fired in self defense when Tillman arrived at the South Fourth Street address and moved his right hand.

The jury acquitted Petitioner of first-degree murder and carrying a concealed weapon, but convicted Petitioner of second-degree murder, felon in possession of a firearm, and felony firearm. The trial court sentenced Petitioner as a habitual offender to two years in prison for the felony firearm conviction, followed by concurrent sentences of two to ten years for the felon-in-possession conviction and fifty to seventy-five years for the murder conviction.

Petitioner challenged his convictions and sentence in an appeal of right. The Michigan Court of Appeals affirmed his convictions and sentence in an unpublished opinion, *see People v. Davis*, No. 231512, 2003 WL 140010 (Mich. Ct. App. Jan. 17, 2003), and on July 28, 2003, the Michigan Supreme Court denied leave to appeal, *see People v. Davis*, 469 Mich. 865; 666 N.W.2d 670 (2003) (table).

Petitioner signed and dated his habeas corpus petition on June 11, 2004. The grounds for relief read:

    I.    A new trial is required because of the risk of a compromised verdict where the trial court failed to give a lessor included offense instruction where there was insufficient evidence of premeditation, deliberation, and intent to kill or warrant first degree murder.

    II.       Petitioner was denied his state and federal constitutional right to the effective assistance of counsel where defense counsel failed to impeach the prosecutor's key witness.

    III.      Resentencing is required where the legislatively mandated sentencing guidelines were badly misscored for the murder conviction, adding points for offense variables which clearly did not apply.

The State argues in an answer to the habeas petition that Petitioner's claims are procedurally defaulted, not cognizable, or without merit.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even

3

require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original).

> Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, review is conducted in light of the law as it existed at the time of the final state court decision, *Teague v. Lane,* 489 U.S. 288 (1989), unless an intervening constitutional decision announces a "watershed" rule of criminal law with implications for the fundamental fairness of the trial proceeding. *Caspari v. Bohlen,* 510 U.S. 383, 396 (1994).

*Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, __ U.S. __, 125 S. Ct. 1670 (2005).

### III. Discussion

#### A. Submitting the First-Degree Murder Charge to the Jury

Petitioner alleges that the prosecutor overcharged him and, because there was insufficient evidence of first-degree murder, the jury likely reached a compromise verdict by convicting him of a lesser-included offense. The Michigan Court of Appeals determined that Petitioner failed to preserve this issue for appellate review by moving for a directed verdict of acquittal on the charge of first-degree murder. Petitioner replies that, under *People v. Patterson*, 428 Mich. 502, 505; 410 N.W.2d 733, 734 (1987), he was entitled to raise his claim for the first time on appeal. This Court need not decide whether Petitioner's claim is procedurally defaulted, because the claim lacks merit, and "[p]rocedural default is not a jurisdictional bar to review on the merits." *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *petition for cert. filed* (U.S. Oct. 4, 2005) (No. 05-7004). The Court will proceed to address the merits of Petitioner's claim.

The Court begins by noting that "so long as the prosecutor has probable cause to believe

4

that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). One could also argue that submitting the first-degree murder charge to the jury was harmless error because Petitioner was acquitted of that charge. *Daniels v. Burke*, 83 F.3d 760, 765 n.4 (6th Cir. 1996). Nevertheless, at least one judge in this District has concluded that

> the unconstitutional submission of a greater charge to a jury is not harmless beyond a reasonable doubt simply because the jury convicts on a lesser, but properly submitted, charge. . . . Thus, if the trial judge's submission of the first-degree murder charge in the petitioner's trial violated the constitution, the error would not have been harmless because the jury may have improperly considered, and compromised from, a charge to which it never should have been exposed.

*Williams v. Jones*, 231 F. Supp.2d 586, 594 (E.D. Mich. 2002) (Lawson, J.) (interpreting *Price v. Georgia*, 398 U.S. 323 (1970)). Resolution of Petitioner's claim, therefore, requires a determination of whether a rational trier of fact could have found the essential elements of first-degree murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

### 1. First-Degree Murder

State court jurors in Michigan can convict a defendant of murder only if "they are convinced beyond a reasonable doubt that (1) the defendant intended (actually or impliedly) to kill and (2) circumstances of justification, excuse or mitigation do not exist." *People v. Morrin*, 31 Mich. App. 301, 323; 187 N.W.2d 434, 445 (1971). First-degree murder requires a finding that the defendant committed a homicide with premeditation and deliberation. *Id.*, 31 Mich. App. at 328; 187 N.W.2d at 448-49.

> To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process

5

undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a "second look."

*Id.*, 31 Mich. App. at 329-30; 187 N.W.2d at 449 (footnotes omitted).

## 2. The Evidence

At Petitioner's trial,

[t]here was evidence presented that prior to the shooting, defendant and Tillman had gotten into an argument over splitting drug sales and that Tillman had made threats against defendant with a gun. However, defendant refused to share his drug business with Tillman. Tillman testified that one or two nights before the shooting, defendant threatened him, telling Tillman that he and his "crew" were "snitches" and "snitches" were not allowed near him and that if Tillman came around "something was going to go down." Further, Robert Moore gave defendant an unloaded gun sometime prior to the shooting.

On the day of the shooting, defendant was standing in Anthony Williams' yard. At some point Tillman pulled up in a car in front of Williams' yard, with the victim and one other person in the car. The evidence established that defendant pulled a gun from either his waistband or intentionally took one from Moore, and started shooting as soon as Tillman and Coleman opened their car doors. However, before defendant started shooting, he said, "I told you motherf ------, don't come over here." Thereafter, defendant fired several shots[1] at Tillman's car and ran away.[2]

*Davis*, 2003 WL 140010, at *1-2 (footnotes in original).

The Michigan Court of Appeals reached the following conclusions:

The fact that defendant missed his target and killed Coleman with a stray bullet that ricocheted off concrete is immaterial. Defendant's animosity and threats

---

[1] The evidence indicated that defendant may have fired as many as seven shots at Tillman as seven fired cartridge cases were found at the scene.

[2] There was also evidence that defendant threatened witnesses after the shooting. Moore saw defendant after the shooting, before defendant turned himself into the police. Defendant threatened to kill anyone who told authorities that he was responsible for shooting the victim, Eric Coleman.

> toward Tillman together with his statements prior to shooting seven times at Tillman presented a question of fact whether there was sufficient time for defendant to form the requisite intent to kill after premeditation and deliberation rather than a split-second impulsive decision.
>
> Notwithstanding the jury's failure to find defendant guilty of first-degree murder, the question of proof of the disputed elements of intent, premeditation, and deliberation were properly left to the trier of fact to resolve. *People v. Avant*, 235 Mich. App. 499, 506; 597 N.W.2d 864 (1999). This Court will not interfere with the jury's role of determining the weight of the evidence or the credibility of the witnesses. *People v. Wolfe*, 440 Mich. 508, 514-515; 489 N.W.2d 748, amended 441 Mich. 1201 (1992). Accordingly, there was sufficient evidence to warrant submission to the jury of the first-degree murder charge.

*Id.* at *2.

The evidence as summarized above indicates that Petitioner removed a loaded gun from his waistband or took the gun from Robert Moore and then fired the gun at least seven times shortly after Jack Tillman, Eric Coleman, and one other person arrived on the scene. Petitioner testified that he thought Tillman was getting ready to shoot him, but no one saw a weapon in the car Tillman was driving, nor any threatening gestures by the occupants of the car. There was no evidence that Tillman or anyone else in the car provoked Petitioner or that Petitioner acted in lawful self defense. In fact, the testimony established that Tillman and the other occupants of the car simply sat in the car for a few minutes upon arriving at 346 South Fourth Street. Moreover, after the shooting, Petitioner ran down the street, threw away the gun, and hid for eleven days before surrendering to the police.

Petitioner's actions before and after the crime, his previous relationship with Jack Tillman, and the circumstances of the killing itself, including the use of a gun, support the conclusion that Petitioner possessed the necessary state of mind for first-degree murder. Thus, the evidence was sufficient to warrant submission of the first-degree murder charge to the jury.

The state court's conclusions did not result in an unreasonable determination of the facts or an unreasonable application of any Supreme Court decision. Petitioner is not entitled to the writ of habeas corpus on the basis of his claim about the alleged compromise verdict.

### B.  Failure to Instruct on Manslaughter

Petitioner maintains that the trial court should have instructed the jury on the lesser-included offense of manslaughter because there was insufficient evidence of first-degree murder.

### 1.  Procedural Default Analysis

The doctrine of procedural default provides that,

> [w]hen a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.

*Seymour v. Walker,* 224 F.3d 542, 549-50 (6th Cir. 2000). The Michigan Court of Appeals declined to review Petitioner's claim on the merits because he failed to request a jury instruction on manslaughter and he expressly acquiesced in the jury instructions as given. Thus, Petitioner's claim is procedurally defaulted, and the Court may consider the merits of his claim only if he can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law" or "that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner has not alleged "cause" for his procedural default and resulting prejudice. The Court therefore may deem any "cause and prejudice" argument abandoned. *Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003), *cert. denied*, 540 U.S. 1151 (2004).

A petitioner may overcome a procedural default even in the absence of "cause and prejudice" upon a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001)

8

(citing *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), and *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). However, this miscarriage-of-justice exception to the rule applies only in the extraordinary case where the habeas petitioner demonstrates that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Petitioner has not submitted any new and credible evidence of actual innocence. Therefore, a miscarriage of justice will not occur as a result of this Court's failure to adjudicate the substantive merits of Petitioner's claim about the jury instructions. Petitioner's claim is procedurally defaulted.

### 2.  *Beck v. Alabama*

Petitioner's claim is barred from substantive review for an additional reason: the Supreme Court has declined to hold that due process requires the giving of jury instructions on lesser-included offenses in non-capital cases. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980). The Sixth Circuit has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir 1990) (*en banc*)).

At least one federal court of appeals has assumed in a different context that "conviction of a crime punishable by the state's most severe penalty of life imprisonment without parole qualifies as a 'capital' conviction. . . ." *L'Abbe v. DiPaolo*, 311 F.3d 93, 97 n.3 (1st Cir. 2002), *cert. denied*, 538 U.S. 932 (2003). In an unpublished decision, the Sixth Circuit declined to decide whether to treat a case in which the death penalty was not imposed as a noncapital case for post-conviction purposes. *See Drake v. Superintendent, Trumbull Corr. Inst.*, 106 F.3d 400, 1997

WL 14422, at \*\*9 (6th Cir. 1997) (unpublished). However, in a more recent published decision, the Sixth Circuit applied *Beck* and *Bagby* in a first-degree murder case arising out of Michigan. *See Scott v. Elo*, 302 F.3d 598 (6th Cir. 2002), *cert. denied*, 537 U.S. 1192 (2003). The Sixth Circuit stated that "failure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Id.* at 606 (quoting *Bagby*, 894 F.2d at 797). Consequently, in this Circuit, Petitioner's claim about the trial court's failure to instruct on manslaughter arguably is not cognizable on habeas review.

### 3. The Merits of Petitioner's Claim

Petitioner's claim has no merit even if it is cognizable and is not procedurally defaulted. "[A] Beck instruction is only required when 'there was evidence which, if believed, could reasonably have led to a verdict of guilt of a lesser offense,' but not the greater [offense]. . . . A lesser-included offense instruction is therefore not required when the evidence does not support it. . . ." *Campbell*, 260 F.3d at 541 (quoting *Hopper v. Evans*, 456 U.S. 605, 610 (1982)).

> In Michigan, voluntary manslaughter
>
> requires that a defendant be found to have had an intent to kill or an intent to do serious bodily harm to the deceased. [I]t is distinguished from murder by an absence of malice. To reduce a homicide to voluntary manslaughter the factfinder must determine from an examination of all of the circumstances surrounding the killing that malice was negated by provocation and the homicide committed in the heat of passion.
>
> . . . .
>
> A defendant properly convicted of voluntary manslaughter is a person who has acted out of a temporary excitement induced by an adequate provocation and not from the deliberation and reflection that marks the crime of murder.
>
> The elements of involuntary manslaughter, although not completely

> exclusive of those found in voluntary manslaughter are distinguishable in several respects. They define a crime that originates out of circumstances often quite different from those found in voluntary manslaughter and apply to a defendant who did not proceed with the intent to cause death or serious bodily injury.
>
> . . . .
>
> The usual situations in which involuntary manslaughter arise are either when death results from a direct act not intended to produce serious bodily harm, or when death results from criminal negligence.

*People v. Townes*, 391 Mich. 578, 589-91; 218 N.W.2d 136, 140-41 (1974) (citations omitted).

There was no evidence of temporary excitement induced by adequate provocation in this case. Although Petitioner and Jack Tillman had argued in the past, the shooting occurred when Tillman drove up to the residence where Petitioner was standing. Tillman and his companions apparently just sat in their car for a few minutes and did nothing to provoke or excite Petitioner. Witnesses testified that Petitioner then took a gun and fired several shots at the victim's car. This conduct suggests that Petitioner intended to cause death or serious bodily harm. Thus, the evidence did not support a conviction of either voluntary or involuntary manslaughter, and Petitioner is not entitled to habeas relief on the basis of his claim.

### C. Assistance of Counsel

Petitioner alleges next that he was denied his constitutional right to effective assistance of counsel because his attorney failed to impeach Robert Moore with his statement to the police. Petitioner contends that Moore's statement to the police was inconsistent with his trial testimony and would have supported Petitioner's claim of self-defense because Moore told the police that Jack Tillman had threatened Petitioner.

The Michigan Court of Appeals opined that

trial counsel effectively impeached Moore with his prior inconsistent statements.

> Contrary to defendant's arguments, trial counsel did challenge Moore's trial testimony on several occasions and emphasized various inconsistencies between Moore's trial testimony, preliminary examination testimony, and statement to police, including the inconsistency that Moore told police that he gave defendant a loaded gun. Thus, trial counsel's performance was not unreasonable in this respect.

*Davis*, 2003 WL 1400010, at *3.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that defense counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The proper standard for attorney performance is "reasonably effective assistance." *Id.* The petitioner must demonstrate that his attorney's "representation fell below an objective standard of reasonableness." *Id.* at 688. The prejudice prong of the *Strickland* test requires demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Petitioner's reply brief includes the transcript of Robert Moore's taped statement to Detective Robert Ruth. *See Pro Per* Reply Brief in Response to Respondent's Answer, Exh. B. According to the transcript, Moore informed Detective Robert Ruth about an argument between Jack Tillman and Petitioner a few days before the shooting. Tillman subsequently came over and told Kristopher Scott that, if Petitioner kept talking "that shit that he was gonna do something." On the same day, Petitioner approached Robert Moore and asked him if he had something he could use to protect himself and his family. Petitioner was afraid that Tillman was going to hurt him. Consequently, Moore handed him a loaded gun. *See id*. at 2-5.

At trial, Robert Moore claimed that Petitioner did not approach him for a weapon. He

12

testified that he gave an unloaded gun to Petitioner because his mother would not allow him to keep the gun in the house. (Tr. Sept. 27, 2000, at 139-40.)

On cross-examination, defense counsel questioned Moore about his statement to the police. Moore admitted then that he had told the police he gave Petitioner a loaded gun. He claimed that he changed his story after Petitioner was locked up.

Defense counsel also asked Robert Moore whether he had participated in a conversation concerning threats made against Petitioner and why he chose to give the gun to Petitioner as opposed to someone else. In addition, counsel attempted to impeach Moore with his testimony at the preliminary examination, and he insinuated that Moore was being dishonest. (*Id*. at 165-66, 171-72, 175, 184-88.)

Defense counsel did not ask Robert Moore whether he had heard any specific threats that Jack Tillman made against Petitioner or whether Petitioner had been afraid of Tillman. Although defense counsel could have raised these additional questions on cross-examination of Robert Moore, he provided "reasonably effective assistance." His questions and attack on Moore's credibility did not fall below an objective standard of reasonableness.

Even if defense counsel's performance was deficient, the result of the trial likely would not have been any different had defense counsel impeached Robert Moore with his comments to the police that Jack Tillman had threatened Petitioner and that Petitioner was afraid of Tillman. Petitioner testified that he did not intend to kill or even shoot Jack Tillman, but that he just wanted to buy some time in order to get away and to preserve his life. Yet he admitted that he did not even think about running in the house (Tr. Sept. 29, 2000, at 628-29, 645-46), and there was no evidence that Tillman was armed or a threat to Petitioner when he approached the house where

13

Petitioner was standing. Furthermore, Petitioner ran away after the shooting and hid from the police for eleven days.

The Court concludes that defense counsel's alleged deficiency on cross-examination of Robert Moore did not prejudice Petitioner's weak defense. Therefore, the state court's conclusion that Petitioner was not deprived of effective assistance was a reasonable application of *Strickland*,[3] and Petitioner has no right to habeas relief on the basis of his ineffectiveness claim.

### D. The Sentencing Guidelines

The third and final habeas claim alleges that the offense variables of the sentencing guidelines were incorrectly scored for the murder conviction. The Michigan Court of Appeals stated on review of this claim that Petitioner did not preserve the issue for appellate review and, therefore, he was foreclosed from challenging the scoring of the guidelines. Petitioner maintains that he preserved the issue by filing a timely motion to remand while his case was pending in the court of appeals.

Petitioner's sentencing claim has no merit even if it is not procedurally defaulted, because the contention that the Michigan Sentencing Guidelines were incorrectly scored involves only an interpretation of state law. *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam )." *Estelle v. McGuire*, 502 U.S. 62, 67-68

---

[3] The Michigan Court of Appeals did not cite *Strickland* in its decision, but it used the same standard.

14

(1991). Because the error complained of does not infringe specific federal constitutional protections, it is not cognizable under § 2254. *Cook*, 56 F. Supp.2d at 797.

## IV. Conclusion

Petitioner's claims lack merit or are procedurally defaulted. Therefore, the petition for a writ of habeas corpus [Doc. #1, June 30, 2004] is DENIED.

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  November 30, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on November 30, 2005, by electronic and/or ordinary mail.

s/Josephine Chaffee
Secretary/Deputy Clerk